**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

PETER TAYLOR,
                         Plaintiff,

    v.                                              No. 07-CV-253
                                                             (NAM/DRH)
TERENCE DUNLAP, D.E.A. Agent;
PAUL D. SILVER, A.U.S.A.; and WILLIAM
MCDERMOTT, D.E.A. Agent,
                         Defendants.

---

**APPEARANCES:**                        **OF COUNSEL:**

PETER TAYLOR
Plaintiff Pro Se
11967-052
Ray Brook Federal Correctional Institution
Post Office Box 9000
Ray Brook, New York 12977

HON. ANDREW T. BAXTER              BARBARA D. COTTRELL, ESQ.
United States Attorney for the            Assistant United States Attorney
   Northern District of New York
Attorney for Defendants
James T. Foley U.S. Courthouse
445 Broadway
Albany, New York 1220702924

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION AND ORDER[1]

    Plaintiff pro se Peter Taylor ("Taylor"), an inmate in the custody of the Federal Bureau of Prisons, brings this action pursuant to Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971) alleging that defendants, two Drug Enforcement

---

[1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Administration (DEA) agents and an Assistant United States Attorney, violated his constitutional rights under the Eighth and Fourteenth Amendments. Am. Compl. (Docket No. 8). Presently pending is defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), or for summary judgment pursuant to Fed. R. Civ. P. 56. Docket No. 47. Taylor opposes the motion. Docket No. 52. For the following reasons, it is recommended that defendants' motion be granted.

## I. Background

The allegations in the amended complaint and the facts asserted by the parties are viewed here in the light most favorable to Taylor as the non-moving party. See subsection II(A) infra,

On April 4, 2003, Taylor was arrested by DEA Special Agents, defendants Dunlap and McDermott. Dunlap Decl. ¶ 2; McDermott Decl. ¶ 2. During the arrest, Dunlap and McDermott seized crack cocaine, powder cocaine, Ecstacy, digital scales, $1,389, and two hand guns. Defs. Mem. of Law at 2. After waiving his constitutional rights, Taylor admitted to owning the guns, drugs, and money. Id.

On February 4, 2004, Taylor and his then-appointed attorney met with defendant Silver, an Assistant United States Attorney, and McDermott to explore whether Taylor could provide information in return for a reduced sentence. Am. Compl. ¶ 13; Silver Decl. ¶ 4; McDermott Decl. ¶ 3. Defendants contend that during these discussions, Silver never represented to Taylor that his cooperation would remain confidential. Silver Decl. ¶¶ 5-8; McDermott Decl. ¶ 4. Taylor asserts that Silver informed him that all information which

Taylor proffered would remain confidential. Am. Compl. ¶ 14. During the meeting, Taylor disclosed the identities of various individuals allegedly involved in drug sales. Id.

On May 10, 2004, Taylor called a friend who told Taylor that one of the individuals Taylor had identified during the February 4 meeting had discovered Taylor's disclosure. Am. Compl. ¶ 16. This information was relayed to that individual by Billie Jo Weed, Taylor's then-girlfriend. Weed, who also had been interviewed by defendants, disclosed that Taylor had cooperated with the federal agents and provided them with names of individuals involved in the distribution of narcotics. Id., Dunlap Decl. ¶ 3; McDermott Decl. ¶ 4. According to defendants, "Taylor's previous attempts to cooperate with the government were not disclosed to Ms. Weed during the interview." Dunlap Decl. ¶ 3; Decl. McDermott Aff. ¶ 4.

On August 8, 2005, Taylor received a letter from Weed stating that Dunlap told Weed that Taylor had cooperated with authorities and disclosed her participation in narcotics distribution activities. Am. Compl. ¶ 18. The same day, Taylor wrote to his lawyer to inform him of the situation. Id. ¶ 21. On September 13, 2005, Silver received a letter from Taylor stating that Taylor wished to apologize for his behavior and requested the opportunity to meet with Silver to share "information [which] . . . is valuable [and that he] would like the chance to help [him]self one last time." Defs. Mem. of Law, Ex. C. On October 4, 2005, Taylor met with Silver. Am. Compl. ¶ 22. Taylor contends that he informed Silver that he was aware that Silver was telling Weed the information which Taylor provided to Silver in confidence, and that Silver was unapologetic and apathetic. Id. Taylor requested federal protection for his family, to which Silver denied the request. Id.

On December 14, 2005, Silver received another letter from Taylor offering to provide

additional information pertaining to multiple murders, a rape, and additional drug activity in exchange for a 5K departure.  Defs. Memorandum of Law, Ex. D.  Additionally, Taylor requested to meet Silver "at the Albany County Jail not at the federal building because everybody knows [he] get sentence[d] Feb[ruary] 15, 2006 and [he] don't [sic] want to blow [his] cover."  Id.

On December 24, 2005, while incarcerated at Albany County Jail, Taylor was advised by another inmate that his attorney was aware that Taylor was cooperating with the government to lessen his impending sentence.  Am. Compl. ¶ 23.[2]  Approximately six months later, while playing poker, Taylor was called a "snitch" by another inmate and requested a transfer for his own protection.  Id. ¶¶ 24-25.

Taylor was moved to a new facility in July 2006.  Id. ¶ 25.  Shortly thereafter, Taylor was involved in an altercation when another inmate called him a "snitch," punched him in the face, and threatened to stab him.  Id. ¶¶ 26-28.  Taylor was placed in protective custody for three months.  Id. ¶ 29.  On February 15, 2007, after Taylor was released from protective custody, he called Weed and was again advised that defendants had questioned her and made multiple references to Taylor's accusations that Weed was distributing narcotics.  Id. ¶ 30; Docket No. 52 at 1, ¶ 2.  On September 25, 2008, Taylor was attacked and stabbed in the chest for being a "snitch."  Docket No. 51 at 1, ¶ 3; see also Id. at 17-27, 44-56.

---

[2] The attorney states, however, that neither in his representation of this individual nor in his representation of Weed did a defendant "indicate . . . that . . . Taylor was cooperating with the government."  Defs. Memorandum of Law, Ex. G ¶¶ 4, 6.

4

## II. Discussion

Taylor asserts that defendants were deliberately indifferent to his health and safety by disclosing his cooperation with the authorities and thereby violating his Eighth and Fourteenth Amendment rights. Defendants assert that there is no merit to Taylor's claims and defendants are entitled to qualified immunity.

### A. Legal Standard

Defendants move to dismiss the complaint or, in the alternative, for summary judgment. Fed. R. Civ. P. 12(b)(6)[3] authorizes dismissal of a complaint that states no actionable claim. When considering a motion to dismiss, "a court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." Sheppard v. Beerman, 18 F.3d 147, 150 (2d Cir. 1994). Dismissal is only warranted if it appears beyond a reasonable doubt that the non-moving party can prove no set of facts in support of his or her claim which would be entitled to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984).

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the

---

[3]"After the pleadings are closed, a motion to dismiss for failure to state a claim is properly brought as a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c)." Allan v. Woods, No. 05-CV-1280 (NAM/GJD), 2008 WL 724240, at *1 (N.D.N.Y. Mar. 17, 2008) (citing Maggette v. Dalsheim, 709 F.2d 800, 801 (2d Cir. 1983)). "The test for evaluating a [Rule] 12(c) motion is the same as that applicable to a motion to dismiss under [Rule] 12(b)(6)." Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998); Burke v. New York, 25 F. Supp. 2d 97, 99 (N.D.N.Y. 1998) (Munson, J.).

absence of disputed material facts by informing the court of portions of pleadings, depositions, and affidavits which support the motion. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Facts are material if they may affect the outcome of the case as determined by substantive law. Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment. Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks dismissal or summary judgment against a pro se litigant, a court must afford the non-movant special solicitude. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006); see also Sealed Plaintiff v. Sealed Defendant #1, 537 F.3d 185, 191 (2d Cir. 2008) ("On occasions too numerous to count, we have reminded district courts that 'when [a] plaintiff proceeds *pro se*, ... a court is obliged to construe his pleadings liberally.'" (citations omitted)). However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion; the requirement is that there be no genuine issue of material fact. Anderson, 477 U.S. at 247-48.

Here, evidence outside the amended complaint has been submitted and considered.

Therefore, defendants' motion will be determined as one for summary judgment rather than dismissal.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 152-53 (2d Cir. 2002).

### B.  Sovereign Immunity

Defendants contend that Taylor's Bivens claim against them in their official capacities is barred by sovereign immunity.  "In a Bivens action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action."  Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 510 (2d Cir. 1994) (citing Carlson v. Green, 446 U.S. 14, 18 (1980)). However,

> under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent.  Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived.

Robinson, 21 F.3d at 510.  (citing F.D.I.C. v. Meyer, 510 U.S. 471, 484-86 (1994)). Therefore, sovereign immunity bars Taylor from suing defendants for damages in their official capacities unless a waiver has occurred.  Additionally, it is well-established that "[t]he only remedy available in a Bivens action is an award for monetary damages from defendants in their individual capacities."  Higazy v. Templeton, 505 F.3d 161, 169 (2d Cir. 2007) (citations omitted).  As no waiver of sovereign immunity has been expressed, Taylor is barred from asserting this claim against any defendant in his official capacity.

Accordingly, defendants' motion for summary judgment should be granted as to Taylor's Bivens claim against defendants in their official capacities.

7

## C. Eighth Amendment[4]

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment." U.S. CONST. amend. VIII. This "includes the obligation to protect prisoners from harm caused by fellow inmates." Haywood v. Woods, No. 01-CV-225 (LEK/DEP), 2007 WL 1834641 at *7 (N.D.N.Y. June 25, 2007) (citations omitted). "The Constitution does not mandate comfortable prisons but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 832 (1970); see also Johnson v. Smith, No. 03-CV-1050 (FJS/DEP), 2006 WL 1843292 at *8 (N.D.N.Y. June 29, 2006). In situations where the inmate is alleging "a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Farmer, 511 U.S. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32 (1993)).

As with other Eighth Amendment claims, a "plaintiff must satisfy both an objective . . . and subjective test." Jolly v. Coughlin, 76 F.3d 468, 480 (2d Cir. 1996) (citations omitted). "When examining a failure to protect claim under the Eighth Amendment, a court must determine whether the inmate has demonstrated that 1) he or she was incarcerated under conditions posing a substantial risk of serious harm, and 2) prison officials exhibited

---

[4] "Eighth Amendment concerns are implicated only after there has been an adjudication of guilt [and t]he protections do not apply where . . . the plaintiff claims that he sustained an injury by reason of post-arrest but pre-conviction governmental abuse." Robinson v. City of Mount Vernon, 654 F. Supp. 170, 172 (S.D.N.Y. 1987) (citations omitted). Taylor alleges conduct that occurred both before and after his conviction. The only post-conviction conduct alleged which could fall within the scope of the Eighth Amendment is the stabbing. See Docket No. 51 at 1, ¶¶ 3, 17-27, 44-56.

8

deliberate indifference to the inmate's plight." Haywood, 2007 WL 1834641, at *7.  The subjective prong of the analysis emphasizes the prison officials' direct knowledge of the substantial risk of harm, for which direct evidence rarely exists.  Rather, a plaintiff must establish that he or she "entered within the zone of [a substantial risk] as known to the defendants." Matthews v. Armitage, 36 F. Supp. 2d 121, 125 (N.D.N.Y. 1999) (citations omitted).

    First, defendants were neither prison officials nor in any way responsible for the conditions under which Taylor was incarcerated.  There exists no basis in the record to find that either Dunlap, Silver, or McDermott had knowledge of any fact from which they should have concluded that Taylor was at risk in prison.  The only argument supporting Taylor's contention is that defendants should have known from the fact that they disclosed his cooperation to others that Taylor would be at risk of retaliation in prison.  Without more, however, the causal connection between such disclosure and an assault by another inmate is too attenuated to and cannot support the requisite finding of knowledge.  Thus, Taylor has failed to state an Eighth Amendment claim regarding the stabbing.  See Walsh v. Goord, No. 07-CV-0246Sr, 2007 WL 1572146, at *9-10 (W.D.N.Y. May 23, 2007) (dismissing Eighth Amendment claim that prison officials had labeled plaintiff a "snitch" and failed to protect him from ensuing assaults by inmates where there was no sufficient showing that defendants had reason to know of the risk of harm).

    Second, Taylor's conclusory allegations of fear, imminent danger, and distrust of defendants are belied by his actions in continually corresponding with Silver, requesting the opportunity to cooperate to help his legal situation, apologizing for his confrontational attitude, and telling Silver that he needed to meet him at the Albany County Courthouse so

as not to "blow [his] cover" with the other inmates with whom he was housed.  Defs. Mem. of Law, Exs. C, D.  Therefore, the record, contradicted only by Taylor's self-serving assertions to the contrary, fails to demonstrate that  Taylor was housed in a dangerous environment created by his continual cooperation with law enforcement where he persisted in attempting to cooperate with the defendants, the very individuals whom he  alleges placed him in jeopardy.

Third, there is no admissible evidence offered by Taylor even to support his threshold contention that any defendant disclosed Taylor's cooperation to others.  All defendants deny such disclosure and the attorney for one of the individuals whom Taylor claims defendants advised of his cooperation denies that any such disclosure occurred in his presence.  See Defs. Mem. of Law at Ex. B, E-G.  In support of his contention, Taylor offers only the statements made to him by  two of Taylor's potential co-conspirators to whom defendants supposedly disclosed Taylor's cooperation.[5]   Taylor's evidence is insufficient to raise a question of fact here.  First, Rule 56(e)(1) requires that on a motion for summary judgment, the party opposing the motion submit affidavits demonstrating asserted facts "made on personal knowledge."  Taylor's assertion of what these two individuals told him does not constitute the personal knowledge of Taylor as to the facts asserted, only that he was told the information by the others.  Second, such hearsay statements of others made to Taylor are inadmissible at trial as well under Fed. R. Evid. 802 and no exceptions to that

---

[5]No different result occurs if the statements of others are contained in conversations with Taylor which he tape recorded unless supported in affidavits by those individual declarants.  The statements of the declarants remain inadmissible under the hearsay rule without an applicable exception.  See Fed. R. Evid. 801(c) (" 'Hearsay' is a statement, other than one made by the declarant while testifying....").

10

rule exist to permit their admission. Thus, Taylor has failed to offer any competent evidence to support his fundamental claim that any defendant disclosed his cooperation and created a risk of harm to Taylor. See Major League Baseball Properties, Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008); Beyah v. Coughlin, 789 F.2d 986, 989 (2d Cir. 1986) ('[H]earsay testimony ... that would not be admissible if testified to at the trial may not properly be set forth in [the Rule 56(e)] affidavit.'").

Accordingly, defendants' motion for summary judgment should be granted on this claim.

### D. Fourteenth Amendment

Taylor claims that defendants' disclosure of his cooperation to others resulted in a violation of his Fourteenth Amendment rights. Am. Compl. ¶ 33. However, "[t]he Fourteenth Amendment applies to state action and not federal action [and since Taylor] does not allege that Defendants acted under anything other than federal law, . . . [his] causes of action[] based on the Fourteenth Amendment [must be] dismissed." Russo v. Glasser, 279 F. Supp. 2d. 136, 142 (D. Conn. 2003); see also Pagan v. New York State Div. of Parole, No. 98 Civ. 5840(FM), 2001 WL 262611, at *9 (S.D.N.Y. Mar. 15, 2001) ("[I]t is settled law that a Bivens action relates exclusively to violations by persons acting under color of federal law . . . ."). Accordingly, defendants' motion as to Taylor's Fourteenth Amendment claims should be granted.

### E. Other Claims

Liberally construing Taylor's amended complaint, he attempts to allege a due process

11

violation of the Fifth Amendment which protects "an individual's right to bodily integrity free from unjustifiable governmental interference." Lombardi v. Whitman, 485 F.3d 73, 79 (2d Cir. 2007) (citations omitted). The right to be free from threats to personal security is not without limits and "the Clause generally confers no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty or property interests of which the government itself may not deprive the individual."  Matican v. City of New York, 524 F.3d 151, 155 (2d Cir. 2008) (citing DeShaney v. Winnebago County Dep't of Soc. Serv., 489 U.S. 189, 196 (1989)).

Two exceptions have been recognized. A constitutional violation may arise "if the state had a special relationship with the victim [or] . . . if its agents in some way had assisted in creating or increasing the danger to the victim." Id. (internal quotations and citations omitted). A special relationship generally exists when there is involuntary custody, such as incarceration. Id. at 156; see also Lombardi, 485 F.3d at 80 n.3 ("Special relationships arise ordinarily if a government actor has assumed an obligation to protect an individual by restricting the individual's freedom in some manner, as by imprisonment."). The second exception requires "an affirmative act that creates an opportunity for a third party to harm a victim (or increases the risk of such harm) . . . ." Lombardi, 485 F.3d at 80 (citations omitted). Such a situation arises where "a private individual derives a false sense of security from an intentional misrepresentation by an executive official if foreseeable bodily harm directly results and if the official's conduct shocks the conscience." Id. at 81.

In addition to proving one of these two exceptions, Taylor must also demonstrate that "the officers' behavior was so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Matican, 524 F.3d at 155. Shocking behavior requires

12

more than "negligently inflicted harm," requiring "conduct intended to injure in some way unjustifiable by any government interest." Lombardi, 485 F.3d at 82 (citing County of Sacramento v. Lewis, 522 U.S. 833, 849-53 (1998) (holding that police engaging in high speed pursuits which risk the lives of those around them do not engage in conscience-shocking behavior because they "have obligations that tend to tug against each other [which require them] . . . to act decisively and to show restraint at the same moment, and their decisions have to be made in haste, under pressure, and frequently without the luxury of a second chance." ).

Here, assuming arguendo that a special relationship existed by virtue of Taylor's incarceration, such a claim still must fail because, as described above, Taylor has offered no competent evidence on this motion to demonstrate that any defendant disclosed his cooperation to others, the lynchpin of his claims. Absent competent proof of such conduct, no issue of fact exists as to whether any defendant disclosed Taylor's cooperation and such claims must fail. Moreover, Taylor has not asserted facts rising to the level of conscience-shocking behavior. There is no indication that, even if proven, any defendant's actions were malicious.

Finally, as in Lewis, defendants faced conflicting obligations to investigate ongoing and avoid causing harm to Taylor. Defendants' conversations with others relating to, Taylor were necessary to the investigation. During the questioning, defendants were required to react quickly to what they were being told to obtain information helpful to their investigation without the luxury of time to ponder avenues of questioning or the ramifications for others such as Taylor. Thus, even assuming that any defendant disclosed Taylor's cooperation to others, no evidence has been proffered demonstrating that any such defendant acted with

the requisite recklessness or intent or that any such disclosure was more than merely negligent. Such proof is insufficient to maintain a constitutional claim. Lombardi, 485 F.3d at 82 (citations omitted).

Accordingly, defendants' motion as to these claims should be granted.

### F. Qualified Immunity

Defendants also contend that they are entitled to qualified immunity. Qualified immunity generally protects governmental officials from civil liability "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002) (McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003). However, even if the constitutional privileges "are clearly established, a government actor may still be shielded by qualified immunity if it was objectively reasonable for the . . . official to believe that his [or her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights of which a reasonable person would have known were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230.

With regards to Taylor's claims, the second prong of the inquiry need not be reached

because, as discussed supra, he has not shown that any defendant violated his constitutional rights.  However, assuming arguendo that Taylor's any such claim survives, no cases have been decided in this Circuit "in which the lodging of a complaint with law enforcement officials, or the complainant's compliance with a request to identify suspects, either singly or in combination, has been held . . . to create a relationship that gives the complaining witness a constitutional right to protection . . . ." Ying Jing Gan v. City of New York, 996 F.2d 522, 534 (2d Cir. 1993).  Thus, absent such precedent, "it could not have been clear to a reasonable [government actor] that his failure to provide protection requested by [the informant], if . . . there were such a request and failure, would have violated [his] rights under the Constitution." Id.

Accordingly, it is recommended in the alternative that defendants' motion on this ground be granted in all respects.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that defendants' motion for summary judgment (Docket No. 47) be **GRANTED** and that judgment be entered for all defendants on all claims.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO**

**OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


Dated: February 17, 2009
       Albany, New York

_David R. Homer_
United States Magistrate Judge